# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 9, 2014

## MITCHELL FORD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 12CR178      Robert G. Crigler, Judge**

**No. M2013-01471-CCA-R3-PC - Filed June 10, 2014**

The petitioner, Mitchell Ford, appeals the denial of his petition for post-conviction relief. At trial, the petitioner was convicted of arson and aggravated burglary, Class C felonies, and was sentenced to two fifteen-year terms to be served concurrently. On appeal, he argues that he was denied his right to effective assistance of counsel because trial counsel failed to challenge the identification of the petitioner by the State's witnesses and failed to challenge a juror who knew the victim and the petitioner and his family. Following a review of the record, we conclude that the petition was properly denied and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and ROBERT W. WEDEMEYER, J., joined.

James Randall Frazier, Lawrenceburg, Tennessee, for the appellant, Mitchell Ford.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Bernard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

At the petitioner's trial, the victim testified that she owned a home at 603 Old Lane Road in Marshall County that she received as part of her late husband's estate. The home was unoccupied. She received a telephone call at about 1:00 p.m. on the afternoon of April 23, 2010, informing her that the home was on fire. She testified that most of the fire damage

occurred over the garage and the kitchen. The victim had asked Mr. James Gaylor to watch her home during the week and keep the yard maintained.

Mr. Gaylor testified that on the day of the fire, the house was not on fire when he left between 11:00 a.m. and 12:00 p.m. to go to a gas station. His wife, Clellene Banks, and his son accompanied Mr. Gaylor to the gas station. He said that he was gone for about ten minutes and that on his way home, he saw a gold Saturn parked in front of the house's garage. He said that the car was backed into the driveway and that he witnessed a black male exit through the front door of the house. After witnessing the man exit the house, Mr. Gaylor shouted "What are you doing over there?," at which point the man got into the gold Saturn and left. Mr. Gaylor was able to observe the man for the length of time it took the man to close the front door and walk from the front door to his car. As Mr. Gaylor attempted to get the car's license plate number, he heard his children screaming and noticed smoke coming from the house. Ms. Banks also observed the gold Saturn in the driveway and testified that the man drove away without answering Mr. Gaylor's question, and she said that the man was not in a hurry until smoke started coming from the garage. Mr. Gaylor testified that he called 9-1-1 once he heard his children screaming that the house was on fire and that he took his son to a doctor's appointment after the fire department had left. He believed that about one to one and a half hours passed from the time that he called 9-1-1 to the time that he took his son to the doctor.

Mr. Gaylor saw the gold Saturn about two hours later on Highway 64 and began following the car, flashing his lights and honking his horn in an attempt to get the car to pull over. He stopped his pursuit when he saw the gold Saturn approaching a police roadblock. Mr. Gaylor testified that the black male he witnessed leaving the victim's home wore a white t-shirt with the sleeves cut off and stone-washed jeans. He identified the petitioner as the man he witnessed leaving the home and as the man he followed on Highway 64. He stated that the petitioner was wearing a long-sleeve shirt when police arrested the petitioner at the roadblock but that the t-shirt he saw earlier was underneath the long-sleeved shirt.

Tennessee Highway Patrol Trooper James Crump testified that during a driver's license checkpoint on Highway 64 on April 23, 2010, he witnessed a grey minivan following a gold, two-door Saturn. He identified Mr. Gaylor as the driver of the minivan and the petitioner as the driver of the Saturn, and he stated that Mr. Gaylor told him that the petitioner started a house fire. Trooper Crump testified that Mr. Gaylor was about fifty feet away from the petitioner when Mr. Gaylor told him the petitioner started a house fire. Trooper Crump contacted the Lewisburg Police Department, a detective arrived at the checkpoint, and they arrested the petitioner. Trooper Crump observed that the petitioner was wearing a dark, long-sleeve shirt, a white tank top underneath the shirt, and khaki pants. He testified that Mr. Gaylor told him that the petitioner was wearing the tank top underneath the

long-sleeve shirt.

Lewisburg Police Officer Kevin Clark took the petitioner into custody. He drove the petitioner to the parking lot of Wright's Paving where Ms. Banks and her daughter, Ms. Watts, identified the petitioner as the individual who left the scene of the fire in a gold Saturn. He testified that the petitioner was the only individual in his car when Ms. Banks and Ms. Watts identified the petitioner and that the women identified the petitioner without hesitation from about 100 feet away.

Ms. Banks identified the petitioner as the man standing at the trunk of the gold Saturn in the driveway of the victim's residence. She stated that the petitioner wore dark pants and a white t-shirt but did not recall anything about the shirt's sleeves. Ms. Banks testified that she and her daughter, Ms. Watts, informed police that they were able to identify the petitioner. She stated that she met Officer Clark at a business on Old Lane Road, that Officer Clark brought the petitioner out of the police car, and that she informed police that the petitioner was the man "who set the house on fire." She recalled that she was about 100 feet away from the petitioner and stated that he had put a dark shirt over his t-shirt. Ms. Banks did not recall if the petitioner's t-shirt had sleeves but stated that it was not a tank top. She testified that as the petitioner drove away from the victim's residence, she viewed a dark shirt in the vehicle and that the shirt was similar to the shirt the petitioner wore when she identified him.

Lewisburg Police Detective James Johnson testified that he was present for Ms. Banks's identification of the petitioner, that she was about 100 feet away from the petitioner, and that Ms. Banks and Ms. Watts identified the petitioner without hesitation. Detective Johnson stated that the petitioner was wearing a blue shirt, a white t-shirt underneath the blue shirt, and khaki pants at the time of Ms. Banks's identification. He thought that the blue shirt had three buttons and did not recall if the shirt had long sleeves. He also testified that if Ms. Banks or Ms. Watts had hesitated or been unsure of the identity of the man they saw leaving the scene, the petitioner would not have been arrested. *State v. Mitchell Jarod Ford*, No. M2011-01504-CCA-R3-CD, 2012 WL 3679573, at *1-8 (Tenn. Crim. App. Aug. 24, 2012).

At the post-conviction hearing, the court heard testimony from the petitioner and trial counsel, along with several other witnesses.[1] The petitioner testified that he requested to

---

[1] We have only included testimony from the petitioner and trial counsel relevant to the issues raised on appeal. Novella Ford, Michele Beesley, Crystal Gray, and Fred Holloway also testified during the post-conviction hearing. However, they testified only in regards to the petitioner's potential alibi, an issue he did not raise with this court on appeal. Therefore, we omit the testimony that is not relevant to the specific issues

(continued...)

have a Tennessee Highway Patrol video introduced into evidence that illustrated the clothing he was wearing when he was identified. He stated that witnesses identified the suspect as wearing a T-shirt and blue jeans and operating a four-door vehicle. The petitioner said that Ms. Banks testified at trial that when she identified the petitioner at the scene he was wearing a long-sleeved pullover and dark pants. The petitioner believed that if the jury were to have viewed the video "they are going to see that I am not the person [the witness] is identifying. I am not even wearing the clothes that she is saying she is certain that the person had on." The petitioner testified that when he was arrested, he was wearing khaki pants and a "cutoff shirt . . . with a collar on it that buttons down with an A-shirt up under it."

The petitioner stated that, at trial, witnesses "kept saying it was a pullover, I had on a pullover" that was supposed to have been the same pullover in the car that Ms. Banks stated she saw and the same pullover the petitioner was wearing when he was brought to the police station for identification. The petitioner said that he took issue with the identification because, when he was returned to the scene, Ms. Banks stated that the petitioner "was wearing an article of clothing that was in the vehicle that she saw as [the petitioner] was leaving the scene, but never existed." He testified that his car was taken and impounded and that a pullover was never discovered and that when he was arrested he was wearing a short-sleeved, button-down shirt.

The petitioner also testified that he had a very distinctive bald hair cut and extensive tattoos which would be very visible to anyone in close proximity to the petitioner. Ms. Banks stated at trial that the suspect had a regular haircut, and the petitioner wanted trial counsel to address the fact that the petitioner had a different haircut than the one suggested by Ms. Banks. He testified that trial counsel refused to introduce the videotape or raise the issue of his distinctive haircut and tattoos at trial. The petitioner stated that he believed that the witnesses' identifications of him were incorrect and that the issue was not pursued by trial counsel. He requested that trial counsel file a motion to suppress the witnesses' identification and admitted that, although the witnesses' statements regarding the clothing were not included in discovery, the basis for suppressing the identification was "[b]ecause [the petitioner] knew that [he] wasn't the individual [identified.]"

The petitioner testified that a member of the jury, Ms. Hargrove, stated that she knew both the victim and the petitioner. Ms. Hargrove worked at the credit union and knew the petitioner and his family because they maintained accounts at the credit union. Ms. Hargrove also knew the victim because the bank had a lien on the victim's house, and the petitioner testified that Ms. Hargrove responded to the scene when the house was on fire. He testified

[1](...continued)
raised in this appeal.

that he brought this to trial counsel's attention but that trial counsel informed him that having Ms. Hargrove on the jury would not present a conflict because she stated that she would not be "partial." The petitioner could not remember trial counsel challenging Ms. Hargrove for cause. The petitioner testified that even if trial counsel had objected, the petitioner would still have a valid post-conviction complaint because he did not understand "how anyone that involved is able to sit on the jury."

Trial counsel testified that he had been licensed as an attorney since 2006 and working in the public defender's office since 2007. He viewed the video taken from the trooper's car with the petitioner and testified that he and the petitioner had differing recollections as to the article of clothing shown in the video. Trial counsel believed that the only difference in the article of clothing was that "at the scene -- the person that [the witnesses] testified that they saw was wearing a tank-top style undershirt, whereas, when [the petitioner] was stopped at the roadblock, he was wearing a sleeveless t-shirt under his clothes." Trial counsel testified that he pointed out the discrepancy in undershirts at trial but primarily tried to use the fact that Mr. Gaylor had telephoned Ms. Banks during his pursuit of the petitioner to weaken Ms. Banks's identification of the petitioner.

Trial counsel testified that he made a tactical decision not to introduce the videotape at trial. He stated that Trooper Crump had already testified that the petitioner was operating a two-door vehicle, and trial counsel felt that with the trooper's testimony it was not necessary to show the video to the jury. He said that the video also could have negatively impacted the petitioner's defense, as it showed how long Mr. Gaylor had to see the petitioner at the scene and how close he was to the petitioner. Trial counsel was concerned that "the jury would be able to decide [Mr. Gaylor] was able to make a better identification than what we were able to argue without the video being show." He testified that he explained to the petitioner the potential consequences of showing the video and that, although the petitioner disagreed with the decision, he appeared to understand the reasoning behind the decision to exclude the videotape. Trial counsel believed that he made the correct tactical decision in not introducing the video.

Trial counsel stated that he was not surprised by anything about Ms. Banks's identification of the petitioner at trial and that he expected the identification and was familiar with it. He was able to cross-examine Ms. Banks about her identification at trial. He testified that the petitioner asked him to file a pretrial motion to suppress the identification. Trial counsel did not file this motion because case law supported the manner in which the petitioner's "showup identification" was handled, which left him no basis to file the motion to suppress. He explained to the petitioner why he could not file the motion, and the petitioner seemed to understand.

Trial counsel testified that the issue with Ms. Hargrove arose after the conclusion of trial. After the trial, the petitioner brought up the fact that Ms. Hargrove had stated during voir dire that she knew the victim, along with the petitioner and the petitioner's mother. Ms. Hargrove knew the petitioner and his mother based on their dealings with the bank where she was employed. Ms. Hargrove "had kind of fallen out of contact with [the victim]" but still saw the petitioner and his mother fairly frequently at the bank. Trial counsel felt that the fact that Ms. Hargrove knew the petitioner and his mother better than she knew the victim "could be a reason to leave her on the jury." He testified that the petitioner did not raise any objections to Ms. Hargrove being a member of the jury until after the trial had concluded and trial counsel was preparing a motion for a new trial.

At the conclusion of the testimony, the post-conviction court made several observations. The court stated that although a motion to suppress Ms. Banks's identification of the petitioner could have been filed, the petitioner had not presented proof by clear and convincing evidence to show that the motion would have been successful. Because the petitioner did not meet his burden, the claim did not present a basis for post-conviction relief. The court found that trial counsel made a tactical decision not to play the videotape at trial and that trial counsel had articulated several reasons to support his decision. The court noted that the tape could have been "counterproductive" to efforts to cast doubt on the identification of the petitioner and observed that tactical decisions did not provide a basis for post-conviction relief unless it was a "totally unreasonable" decision. The court found that trial counsel made a sound decision in excluding the videotape. The court also stated that there was no proof in the hearing that Ms. Hargrove was tainted by her knowledge of the victim and observed that trial counsel made a tactical decision to keep Ms. Hargrove on the jury because the fact that she knew the petitioner and his family "could enure to the [petitioner's] benefit." The court found that the petitioner had not proved by clear and convincing evidence that Ms. Hargrove's relationships with the victim and the petitioner affected the verdict. The court then denied the petition for post-conviction relief by written order.

## ANALYSIS

The petitioner argues that he was denied his right to effective assistance of counsel. Specifically, he contends that counsel was ineffective for failing to challenge the identification of the petitioner by the State's witnesses by admitting a video that depicted the petitioner's apparel when he was identified and for failing to challenge a juror who knew the victim and the petitioner and his family.

To obtain post-conviction relief, the petitioner must demonstrate that "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the

Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). The petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *State v. Vaughn*, 202 S.W.3d 106, 115 (Tenn. 2006). This court may not substitute its own inferences for those drawn by the post-conviction court, as questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 455 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Therefore, this court reviews the trial court's factual findings de novo with a presumption of correctness unless the evidence preponderates against the trial court's findings. *Fields*, 40 S.W.3d at 458. The trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that "counsel's representation fell below an objective standard of reasonableness;" that is, "the services rendered or the advice given must have been below 'the range of competency demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 688; *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936). The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. In order to fairly assess counsel's conduct every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216; *Goad*, 938 S.W.2d at 370.

The petitioner contends that introducing the Tennessee Highway Patrol video would have resolved the inconsistencies between the witnesses' identification of the clothing the suspect was wearing and the clothing that the petitioner was wearing and would have illustrated that he was not the individual that the witnesses identified. However, trial counsel was aware of the video footage and testified that he made a tactical decision not to admit it. Courts should defer to matters of tactical choices only if the choice is an informed one based upon adequate preparation. *Goad*, 938 S.W.2d at 369. Here, the evidence does not preponderate against the finding that trial counsel made a reasonable tactical decision. Trial counsel testified that he believed the video ultimately could prove harmful to the petitioner's defense, as it might undermine the defense's argument that Mr. Gaylor could not make an accurate identification of the petitioner. He further testified that he recalled the only discrepancy regarding the articles of clothing to be the style of undershirt worn; the witnesses testified the suspect had on a tank-top style undershirt while the petitioner was wearing a sleeveless undershirt. Trial counsel also noted that the differences between the style of undershirts offered little support to bolster the petitioner's theory of misidentification. We conclude that the petitioner has failed to carry his burden of proving that trial counsel performed deficiently and that the petitioner suffered prejudice. Trial counsel made a tactical decision not to play the video, and the petitioner has not shown how playing the video may have resulted in a different outcome at trial. Therefore, the petitioner is not entitled to relief as to this claim.

The petitioner's claim that counsel was ineffective for failing to challenge the inclusion of Ms. Hargrove on the jury also must fail. Trial counsel made a tactical decision to keep Ms. Hargrove on the jury, as he felt that it could prove beneficial that Ms. Hargrove

knew the petitioner and his family better than she knew the victim. The petitioner has not offered any proof that challenging Ms. Hargrove as a juror would have resulted in a different outcome at trial. We conclude that the evidence does not preponderate against a finding that trial counsel made a reasonably informed tactical decision; therefore the petitioner is entitled to no relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE